UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN D. SOMMERVILLE,

       Plaintiff,                     Case No. 2:16-cv-10765

v.

SCHENKER, INC.,                  HONORABLE STEPHEN J. MURPHY, III

       Defendant.

_____/

## OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [21]

Plaintiff Stephen Sommerville filed a complaint alleging that his former employer, Defendant Schenker, Inc. ("Schenker"), violated the Age Discrimination in Employment Act ("ADEA"), the Michigan Elliot Larsen Civil Rights Act ("ELCRA"), and the Family and Medical Leave Act ("FMLA"). ECF 1. On May 12, 2017, Schenker filed a motion for summary judgment. ECF 21. The Court reviewed the briefs and finds that a hearing is unnecessary. E.D. Mich. LR 7.1(f). For the reasons below, the Court will grant Schenker's motion.

### BACKGROUND

Stephen Sommerville worked for Schenker, and its predecessors, for more than thirty-five years. In January 2013, Schenker offered Sommerville the position as a Global Account Manager ("GAM"). ECF 21-2, PgID 126; ECF 21-4, PgID 190. For several months, Sommerville fulfilled his responsibilities in his old role as an International Services Manager and for his new role as a GAM, until he assumed full

1

responsibility of his role as a GAM in April 2013. ECF 21-2, PgID 126. For about one year as a GAM, Sommerville reported to Rhonda Janzewski. *Id.* In May of 2014, Schenker hired Randall Creel. Creel's responsibilities included supervision of Sommerville and Schenker's other GAMs: G.K. Girish and Tim Horton.

On July 3, 2014, Sommerville notified Schenker that he required a medical leave of absence after a scheduled hernia surgery. On July 7, 2014, Schenker's leave of absence administrator confirmed Sommerville's leave for July 8–16, 2014 and subsequently extended his leave until July 21, 2014. Sommerville returned to work on July 22, 2014.[1]

In October 2014, Schenker tasked Daniel Bergman—Senior Vice President, Key Account Management and Sales for the Region Americas—with reducing the number of positions in the company. ECF 21-16, PgID 289. Schenker terminated Sommerville's position on November 7, 2014 citing the company's reduction in workforce. ECF 21-9, PgID 207.[2] Bergman testified that he relied upon data from the Key Account Management database and the GAM's future sales opportunities, in particular the "best and few" data from Schenker's salesforce.com database. The database generates "best and few" data based on the GAM's inputs of future business opportunities with the highest potential to materialize into future business for Schenker. After the termination

---

[1] There was no direct evidence of negative comments about Sommerville's leave when he returned to work. ECF 21, PgID 90.

[2] Sommerville extensively argues about Schenker's delay in providing and the perceived insufficiency of Schenker's Old Workers Benefit Protection Act ("OWBPA") paperwork. ECF 24, PgID 340. But the OWBPA does not create a cause of action and non-compliance with it does not establish an age discrimination claim. An employee's relief from OWBPA non-compliance is to file a lawsuit for age discrimination. *See Williams v. Gen. Motors Corp.*, 901 F. Supp. 252, 254–55 (E.D. Mich. 1995).

of Schenker's GAM position, Schenker transferred the Lear account to Creel. Later, Horton assumed the responsibilities of the Lear account.

## STANDARD OF REVIEW

The Court may grant summary judgment "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to show that a fact is, or is not, genuinely disputed, both parties are required to either "cite[] to particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

## DISCUSSION

Somemerville's complaint alleges age discrimination in violation of the ADEA, 29 U.S.C. § 621 *et seq.*, and the ELCRA, Mich. Comp. Laws § 37.2101, and retaliatory termination in violation of the FMLA, 29 U.S.C. § 2601 *et seq.*

The Court will analyze the claims primarily under a burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see, e.g.*, *Donald v. Sybra,*

*Inc.*, 667 F.3d 757, 762 (6th Cir. 2012) (recognizing application of *McDonnell Douglas* to FMLA claims). First, the plaintiff must make a prima facie showing. Once that is established, the defendant must offer a legitimate, non-discriminatory reason for the adverse employment action. If a reason is shown, the plaintiff then carries the burden of showing by a preponderance of the evidence that the defendant's proffered reason is merely a pretext. At each stage, the Court must consider whether there is sufficient evidence to create a genuine dispute of material fact. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016).

I. <u>Age Discrimination Claims</u>

Age-discrimination prevention statutes bar employers from discharging or discriminating against employees based on age. 29 U.S.C. § 623; Mich. Comp. Laws. § 37.2202. Discrimination may be shown by either direct or indirect evidence. Direct evidence is evidence that, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Lautermilch v. Findlay City Schs.*, 314 F.3d 271, 275–76 (6th Cir. 2003). Because there is no direct evidence, the Court must apply the *McDonnell Douglas* burden-shifting framework.[3] *Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009). And Sommerville relies upon circumstantial evidence to support his age discrimination claims. Therefore, the Court will analyze both federal and state law claims under *McDonnell Douglas*'s burden-shifting approach.[4]

---

[3] The Court considers four factors to determine whether direct evidence exists. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002). No evidence supports the factors here.

4

Sommerville presents two events as evidence of age discrimination: the termination of his GAM position and Schenker's failure to provide him an opportunity to transfer to a different position within the company.

> A. Sommerville fails to establish the prima facie case of age discrimination as it relates to the Global Account Manager position.

To make a prima facie showing, Plaintiff must show: (1) he was at least 40 years old at the time of the alleged discrimination, (2) he was subject to an adverse employment action, (3) he was qualified for the position, and (4) he was replaced by a younger person. *Lilley*, 958 F.2d at 752; *Phelps*, 986 F.2d at 1023. The parties dispute only the fourth element.

Several nuances exist if the plaintiff's termination arose during a reduction in workforce ("RIF"). First, during a RIF, a person is not replaced "when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among existing employees already performing related work." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). Replacement occurs "*only* when another employee is hired or reassigned to perform the plaintiff's duties." *Id.* (emphasis added).

---

[4] The Michigan Supreme Court held that the McDonnell Douglas standard may be applied to an age-discrimination suit brought under state law. *Matras v. Amoco Oil Co.*, 424 Mich. 675, 683–85 (1986).

Sommerville's age discrimination claims under the ADEA and ELCRA utilize the McDonnell Douglas analytical framework. *Geiger v. Tower Auto.*, 579 F.3d 614, 621–22, 626 (6th Cir. 2009). Under the ADEA, Plaintiff has the burden of persuading the jury that he would not have been terminated but for his age. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). Plaintiff's ELCRA claim requires a lesser showing that his age was a motivating factor behind defendant's decision not to hire him. *Block-Victor v. CITG Promotions, LLC*, 665 F. Supp. 2d. 797, 805, 817 (E.D. Mich. 2009).

Second, if a plaintiff alleges age discrimination during a RIF, then he carries a greater evidentiary burden in demonstrating the prima facie case. *Ridenour*, 791 F.2d at 57. The plaintiff must additionally present direct, circumstantial, or statistical evidence tending to demonstrate that an employer discharged him for impermissible reasons. *Campbell*, 509 F.3d at 785.

Here, Schenker did not replace Sommerville. Upon Sommerville's termination, Creel took immediate control over the Lear account, but within one or two months Horton assumed responsibility for the account. ECF 21-13, PgID 254; ECF 24-7, PgID 461. Creel was "assigned to perform the plaintiff's duties in addition" to his other duties and then the work was "redistributed" to Horton, an "existing employee[] already performing related work." *Barnes*, 896 F.2d at 1465.

Plaintiff contends that Creel's adoption of Sommerville's duties amounted to a "fundamental change in [his] duties" that constituted replacement. ECF 24, PgID 349. The argument is without merit. First, Plaintiff points to *Bonfiglio v. Michigan Underground Specialists*, No. 09-13534, 2010 WL 3190829 (E.D. Mich. Aug. 12, 2010). *Bonfiglio* cited *Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519 (6th Cir. 1997), for the proposition that elevating a part-time employee to full-time status to assume the responsibilities of an employee terminated as part of a RIF constituted replacement. 2010 WL 3190829, at *6. *Tinker* analogized that kind of replacement to a reassignment. 127 F.3d at 522. But *Bonfiglio* does not apply here because the employer replaced the plaintiff-employee with a new hire six months after his termination. Similarly, *Tinker*'s carve-out is inapplicable here because both Creel and Horton were full-time employees at the time of Sommerville's termination.

6

Second, even if *Bonfiglio* were applicable to Sommerville, the redistribution of work from Sommerville's terminated position to Creel did not "fundamentally change[] the nature of the employment" even if the reassigned duties differed from those normally held by Creel. *Bonfiglio*, 2010 WL 3190829, at *6. Schenker's redistribution of work duties to pre-existing employees does not qualify as "replacement" of Sommerville for purposes of the prima facie case of age discrimination.

B. Sommerville fails to establish the prima facie case of age discrimination as it relates to his non-transfer to a different position within Schenker.[5]

In workforce reduction cases, an employer violates the ADEA if the employer (1) terminates numerous positions, (2) allows younger employees to transfer to other available positions, but (3) does not allow employees in the protected class to transfer to available positions for which they are qualified. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 351 (6th Cir. 1998). An employer is under no obligation to transfer employees whose positions are eliminated during a RIF, but the employer may not transfer some displaced employees and not others based on age. *Id.*; *see also Hawley v. Drusser Indus., Inc.*, 958 F.2d 720, 723 (6th Cir. 1992).

The *McDonnell Douglas* framework guides the Court's analysis. A prima facie case in age-discrimination-for-failure-to-transfer cases has four elements. The plaintiff must show: (1) membership in a protected class, (2) plaintiff was qualified for positions available at the time of the elimination of her position, (3) the employer did not offer the

---

[5] Defendant notes that Plaintiff did not raise the non-transfer theory in either his EEOC charge or his complaint. If Defendant transferred younger employees and did not transfer older employees, however, that action would amount to a violation of the ADEA and fall within the broad scope of Sommerville's pleading.

7

position to plaintiff, and (4) a similarly situated employee who is not a member of the protected class was offered the opportunity to transfer to an available position. *Id.* Only the second and fourth elements are in dispute in the present case.

Schenker did not transfer any employees to new positions during the 2014 RIF. Sommerville testified that, during previous RIFs, he would consider which employees to "move to other positions" or terminate. ECF 24-2, PgID 375–76. Janzweski testified that, after 2008, RIFs became "very regular", ECF 24-3, PgID 412, and that she had indirect knowledge of Schenker transferring employees during previous RIFs, *id.* at PgID 416–17. There is no evidence in the record, however, that Schenker transferred any employees—let alone younger employees—during the 2014 RIF of which Sommerville's termination was a part or in any subsequent RIFs. Evidence of the fourth prong of Sommerville's age-discrimination-for-failure-to-transfer claim is absent.

II.     FMLA Claim

The Sixth Circuit recognizes two theories for recovery under the FMLA. *Hoge v. Honda of Amer. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004). The first theory, of "entitlement" or "interference", involves an employer's unlawful interference with any right provided by the FMLA. 29 U.S.C. § 2615(a)(1). The second theory, of "retaliation" or "discrimination", involves an employer's discrimination against an individual for opposing an employer's violation of the FMLA. *Id.* at § 2615(a)(2). Plaintiff's claim falls under only the retaliation theory. If the plaintiff makes a prima facie showing, then the *McDonnel Douglas* burden-shifting framework applies and a defendant must articulate a legitimate, non-discriminatory reason for the adverse action. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011). After that showing, a plaintiff can

8

refute the reason "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dewis v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

The prima facie case for FMLA retaliation claims requires proof of four elements. *Donald*, 667 F.3d at 761. The parties dispute only the fourth element—whether there was a causal connection between the protected FMLA activity and the adverse employment action. The Sixth Circuit has acknowledged that the temporal proximity between a request for leave and an employee's termination may give rise to a presumption of a causal connection. *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283–84 (6th Cir. 2012) (collecting cases).[6] Close temporal proximity may create a presumption of causality because, if an employer swiftly terminates employment after learning of protected activity, the employee would not have enough time to gather "any such other evidence of retaliation." *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

If, however, "some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.*; *see also Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (collecting cases and noting that "temporal proximity must be 'very close'").

---

[6] Plaintiff avers that Bergman began pulling data in September 2014 "only weeks after Sommerville returned from his FMLA leave." ECF 24, PgID 357. But the Sixth Circuit's treatment of temporal proximity consider the dates of either the request to leave or the actual leave and the date of the adverse employment action.

Sommerville went on FMLA leave from July 8 to July 21, 2014. Bergman began considering positions for the RIF in October 2014 and terminated Sommerville's GAM position on November 7, 2014. The nearly four months between Sommerville's return from FMLA leave and the adverse employment action is not sufficient, in itself, to create a presumption of causality. *See Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) (finding two to five months insufficient time to establish temporal proximity).

When temporal proximity is insufficient, a plaintiff must couple the timing with other evidence of retaliation. *See, e.g. Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006) (finding six months sufficient for causal connection when accompanied by other evidence). Sommerville does not provide additional evidence that his exercise of his FMLA rights caused Schenker to eliminate his position.

Even if the Court were to find that the temporal proximity between Sommerville's FMLA leave and termination sufficiently demonstrated a causal connection, Schenker provided a legitimate, non-discriminatory reason for Sommerville's termination. Namely, Bergman relied upon the "best and few data" in making his determination.

And Plaintiff fails to refute Schenker's legitimate, non-discriminatory reason. First, Sommerville does not dispute that the sales data Bergman relied upon was grounded in fact. Second, Sommerville does not argue that the "best and few" sales data did not support Bergman's decision. Third, Sommerville does not challenge the data's sufficiency to warrant the adverse employment decision. Rather, Sommerville argues that the "best and few" data created a misleading picture of his sales performance. Sommerville contends that Bergman would utilize the "best and few" data only to target Sommerville. The argument fails.

The Sixth Circuit uses the "honest belief" rule to evaluate an employer's proffered reason for discharging an employee. *Smith v. Chrysler Corp.*, 155 F.3d 799, 806–07 (6th Cir. 1998). If an employer honestly believes its reason for terminating an employee, the employee "cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). An honest belief exists if the employer made its decision based on particularized facts before the employer at the time the decision was made. *Id.* Even a subjective reason come to through a "haphazard" evaluation process does not create an inference of discrimination. *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 270 (6th Cir. 2010) (quoting *Skelton v. Sara Lee Corp.*, 249 F. App'x 450, 462 (6th Cir. 2007)).

Bergman honestly believed the proffered reason for terminating Sommerville because he relied upon particularized facts in making the decision. Moreover, Bergman's decision-making process was objective. Sommerville may dispute the efficacy of the "best and few" data, but that alone is insufficient to show that the proffered reason is pretextual.

## ORDER

**WHEREFORE** it is hereby **ORDERED** that Defendant's motion for summary judgment [21] is **GRANTED**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
Dated: December 28, 2017     United States District Court Judge

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 28, 2017, by electronic and/or ordinary mail.

                                          s/ David Parker
                                          Case Manager